Mailed:
December 10, 2010
Bucher

**THIS OPINION IS A PRECEDENT OF THE TTAB**

**UNITED STATES PATENT AND TRADEMARK OFFICE**

———

**Trademark Trial and Appeal Board**

———

In re Richard M. Hoefflin

———

Serial Nos. 77632391, 77632400 and 77632406

———

Tamara L. Harper of Hoefflin & Associates, ALC for Richard
   M. Hoefflin.

Karen K. Bush, Trademark Examining Attorney, Law Office 105
   (Thomas G. Howell, Managing Attorney).

———

Before Walters, Bucher and Wellington, Administrative
   Trademark Judges.

Opinion by Bucher, Administrative Trademark Judge:

   Richard M. Hoefflin seeks registration on the Principal

Register of three marks, as follows:

| | |
|---|---|
| **OBAMA BAHAMA PAJAMAS** | for "pajamas" in International Class 25;[1] |

———

[1]  Application Serial No. 77632391 was filed on December 12,
2008 based upon applicant's allegation of a *bona fide* intention to
use the mark in commerce.  No claim is made to the exclusive right
to use the word "Pajamas" apart from the mark as shown.  Applicant
makes the claims that "The English translation of 'Obama' in the
mark is 'to lean,' and that "The name shown in the mark does not
identify a particular living individual."

| | |
|---|---|
| **OBAMA PAJAMA** | for "pajamas" in International Class 25;[2] |
| **BARACK'S JOCKS DRESS TO THE LEFT** | for "boxer briefs; briefs; pajama bottoms; pajamas; sleepwear" in International Class 25.[3] |

The Trademark Examining Attorney refused registration pursuant to Section 2(c) of the Trademark Act, 15 U.S.C. § 1052(c), because the record does not include the written consent of President Barack Obama, the name of the living individual identified in these proposed marks.

After the Trademark Examining Attorney made the refusals final, applicant appealed each refusal to this Board. Inasmuch as all three of these appeals involve common questions of law and fact, and each has been treated in substantially the same manner by the applicant and by the Trademark Examining Attorney, we have consolidated these

---

[2] Application Serial No. 77632400 was filed on December 12, 2008 based upon applicant's allegation of a *bona fide* intention to use the mark in commerce. No claim is made to the exclusive right to use the word "Pajama" apart from the mark as shown. Applicant makes the claims that "The English translation of 'Obama' in the mark is 'to lean,' and that "The name shown in the mark does not identify a particular living individual."

[3] Application Serial No. 77632406 was filed on December 12, 2008 based upon applicant's allegation of a *bona fide* intention to use the mark in commerce. No claim is made to the exclusive right to use the word "Jocks" apart from the mark as shown. Applicant makes the claims that "The name shown in the mark does not identify a particular living individual," and that "The English translation of 'barack' in the mark is 'blessed.'" This latter claim appears to be based on evidence submitted by applicant discussing the Jewish name, "Baruch," at http://en.wikipedia.org/wiki/Baruch.

three separate appeals and are issuing a single decision herein.

We affirm all three refusals to register.

As noted by the Trademark Examining Attorney, this subsection of the Lanham Act absolutely bars the registration of a designation that identifies a particular living individual absent written consent.[4]  However, this statutory provision does not contemplate protection for someone who coincidentally bears an applied-for name.  In determining whether a particular living person bearing the "name" would be associated with the mark as being used on the goods, we must consider (1) if the person is so well known that the public would reasonably assume the connection, *or* (2) if the individual is publicly connected with the business in which the mark is being used.  *See Martin v. Carter Hawley Hale Stores, Inc.,* 206 USPQ 931, 933 (TTAB 1979); *In re Sauer*, 27 USPQ2d 1073 (TTAB 1993), aff'd, 26 F.3d 140 (Fed. Cir. 1994); 2 J. McCarthy, McCarthy on Trademarks and Unfair

---

[4]    **§ 2 (15 U.S.C. § 1052). Trademarks registrable on the principal register**
No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it ...
    (c) Consists of or comprises a name, portrait, or signature identifying a particular living individual except by his written consent, or the name, signature, or portrait of a deceased President of the United States during the life of

Competition, § 13:37 (4th ed. 2010). This provision is intended to protect the intellectual property right of privacy and publicity that a living person has in his/her identity. *Id*. at §§ 10.07, 28.1 and 28.46. *Cf. University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co., Inc.*, 703 F.2d 1372, 1376, 217 USPQ 505, 509 (Fed. Cir. 1983), *aff'g* 213 USPQ 594 (TTAB 1982); and *Canovas v. Venezia 80 S.R.L.,* 220 USPQ 660, 661 (TTAB 1983).

In support of her position, the Trademark Examining Attorney cites to a "Morning Edition" story on January 12, 2009 (after the election of President Obama and days before his inauguration as the 44th President of the United States – and just weeks after the date on which these applications were filed) from National Public Radio (NPR) reporter Steve Inskeep.[5] The news report highlighted many examples of "Obamification" which the nation had experienced over the preceding year. Inskeep and members of the American Dialect Society whom he interviewed defined "Obamifications" as "words manufactured from Barack Obama's name." According to those interviewed, some of these words originated with

---

his widow, if any, except by the written consent of the widow.

[5] This transcript was attached to the Trademark Examining Attorney's denial of applicant's request for reconsideration that issued on May 6, 2010 in Application Serial No. 77632400, originally http://www.npr.org/templates/story/story.php?storyId=99235478.

supporters and others with detractors.  Many were used in a political sense only, while others tried to capitalize on the surging demand for Obama merchandise.

Perhaps it is not surprising that an early online favorite was the rhyming "Obama pajama."  As shown by the Trademark Examining Attorney , the online Urban Dictionary actually has an entry for "**Obamapajamas** -- a form of sleepware [sic] covered with little pictures of barrack [sic] obamas [sic] head.  worn [sic] by people who want to sleep with barrack [sic] obama [sic]."[6]  The exhibits that the Trademark Examining Attorney attached to her Final action in Application Serial No. 77632400 included several copies of an image that appears to be a photograph of "Obama Pajamas."[7]



In the face of this showing, applicant takes a number of different tacks in an attempt to overcome the Section 2(c)

---

[6]    http://www.urbandictionary.com/products.php?txtid=769116   We hasten to add that we do not accept this online dictionary entry for the given definition, but merely because it indicates use of the term to reference the President.

[7]    http://allthingsobama.blogspot.com/2008/08/ojamas-obama-pajamas-for-sale.html and http://style.bitchbuzz.com/show-your-support-by-votingand-obama-pajamas.html

bar.  One of applicant's arguments is that the terms "Barack" and "Obama," as used in his marks, do not represent any particular individual, and certainly not "the United States President Barack Hussein Obama II."  Applicant's Serial No. 77632400, appeal brief at 2.  Of course, the fact that applicant filed these three particular applications together just weeks before President Obama's historical swearing-in would seem to belie this representation.  In any case, given that registration is being sought during the presidency of Mr. Obama, and that the record shows the "obamafication" discussed above, we have no doubt but that purchasers would recognize that **OBAMA BAHAMA PAJAMAS,  OBAMA PAJAMA**, and **BARACK'S JOCKS DRESS TO THE LEFT** are referring to the Forty-Fourth President of the United States.  To the extent that applicant is suggesting that Section 2(c) prohibits only registration of the entire names of individuals, we disagree. Rather, this statutory sub-section operates to bar the registration of marks containing not only full names, but also surnames, shortened names, nicknames, etc., so long as the name in question does, in fact, "identify" a particular living individual.  *In re Sauer*, 27 USPQ2d at 1074.

Applicant also takes the position that the record does not support the conclusion that President Obama is in any way connected with pajamas, sleepwear and underwear.

Without this showing, applicant argues, there is no bar under Section 2(c) of the Act. However, we agree with the Trademark Examining Attorney that in making our § 2(c) determination as to these three claimed marks, we find that President Barack Obama, *because* he is the President of the United States, is so well known and famous that members of the purchasing public will associate the individual names "Barack" and "Obama" as used in applicant's marks with the President and will reasonably assume that President Obama is being identified. *Martin v. Carter Hawley Hale Stores, Inc*., 206 USPQ at 933 [No evidence to indicate that "Neil Martin" enjoys a reputation of such fame as to be recognizable by the public at large, *or* that he has been publicly connected with the clothing field]; and *Ross v. Analytical Technology Inc*., 51 USPQ2d 1269 (TTAB 1999) [record fails to show that Dr. James W. Ross, Jr. is so well-known that the mark **ROSS** would lead to an assumption that the mark referred to him, and that he is associated with the electrodes on which the mark **ROSS** is being used].[8] While lesser-known figures (like Mr. Martin or Dr. Ross) may have

---

[8]    *Accord*, *Laub v. Industrial Development Laboratories, Inc*., 121 USPQ 595 (TTAB 1959) [applicant admits an association between John H. Laub and the flowmeter on which it applied the term **LAUB**]; and *Reed v. Bakers Engineering & Equipment Company*, 100 USPQ 196 (TTAB 1954) [Paul N. Reed designed and built the involved ovens, and the record shows that registrant's customers will identify Mr. Reed on seeing registrant's **REED REEL OVEN** mark].

- 7 -

to show that the consuming public connects them with the manufacturing or marketing of shirts or electrodes, for example, well-known individuals such as celebrities and world-famous political figures are entitled to the protection of Section 2(c) without having to evidence a connection with the involved goods or services.  See *In re Masucci*, 179 USPQ 829 (TTAB 1973) [In spite of any common law rights applicant may have, **EISENHOWER** for greeting cards was refused on the ground that it consisted of the name of the late President Eisenhower during the life of his widow, and application for registration was filed without her consent]; and *In re Steak and Ale Restaurants of America, Inc*., 185 USPQ 447 (TTAB 1975) [**PRINCE CHARLES** for meat was refused on the ground it identified a particular living individual whose consent was not of record].

The Trademark Examining Attorney has done an excellent job marshalling a variety of press excerpts to demonstrate the obvious – namely, that President Barack Obama is extremely well known.  Over the period of the past several years, including his historic election to the presidency in November 2008, each of the names "Barack" and "Obama" has become so closely associated with this particular historic individual that the usages of these names in applicant's

three claimed trademarks will instantly create an association with the President.

Applicant has listed a large number of third-party registrations for marks that consist of the first name and the surname of the six immediate past presidents.  The Trademark Examining Attorney has correctly objected to applicant's mere listing of registrations for the above-referenced marks, which clearly have not been made of record.  However, because applicant has devoted so much of his argument to the claim that other presidential first names and/or surnames have been registered, we will address this argument briefly without discussing particular registrations.

Specifically, applicant devotes much of his argument to comparing his applied-for marks to marks in third-party applications that issued into registrations despite potential Section 2(c) bars.  However, to compare, as applicant has attempted, the much more unusual given name "Barack" to the popular first names of immediate past presidents is on its face immediately distinguishable.  Unlike the name "Barack," the given names "George," "Bill" (or "William"), "Ronald," "Jimmy" and "Richard" are consistently among the most popular

male names in the country.[9]  The Trademark Examining Attorney

has also demonstrated with statistical evidence that while

there are tens (if not hundreds) of thousands of persons in

the United States having the surnames of these same six

immediate past presidents, the surname Obama appears in the

same directory only 82 times.  Some of the other five past

presidential surnames also appear, for example, as

geographical designations for places within the United

States.

Applicant argues that nothing in any of his three marks

represents any particular individual, and that the terms

"Barack" and "Obama" as adopted by applicant are "arbitrary[10]

---

[9]     See evidence attached to the Trademark Examining Attorney's
denial of applicant's Request for Reconsideration in Application
Serial No. 77632406, dated May 6, 2010, at 12-23.  As seen from
excerpts from the Social Security Office's popular names website,
as well as from the Baby Name Wizard website, the names
"Richard," "James," "Ronald," "Bill" or "William" and "George" are
highly-ranked and popular names.  By contrast, the given name
"Barack" is not listed or ranked in the top one-thousand names
for any year.

[10]    The bibliographic database for two of the involved
applications contains applicant's amended claim that "The English
translation of 'Obama' in the mark is 'to lean'."  This is based
upon applicant's contention that "the word, 'Obama,' is a very
ancient Kenyan surname, has origins in Swahili, found frequently
among the Luo people and is *thought to have derived* from the root
word "Obam," which *meant something similar* to 'to lean'" [e*mphasis*
added] with a citation to a web page located at
http://babynamesworld.parentsconnect.com/meaning_of_Obama.html, all in
applicant's response of July 22, 2009 to an Office action in
Application Serial No. 77632400.  This Nickelodeon
"ParentsConnect" website appears to be a wiki type of cite where
anyone can add pages.  After the Trademark Examining Attorney
refuted this claim with the excerpt from a Swahili-English
dictionary (i.e., no entry for the term "Obama"), applicant dropped

and distinctive." We find this argument unpersuasive in view of the evidence of record, indicating the fame of President Barack Obama and the unusual character of both his first and last names. In conclusion, we find that all three of applicant's claimed marks create a direct association with President Barack Obama. Accordingly, in the absence of President Obama's written consent, these applications are barred under Section 2(c) of the Trademark Act.

*Decision*: The refusals to register herein under Section 2(c) of the Lanham Act are hereby affirmed.

---

this assertion as revealed by his final brief. We have given applicant's assertions as to the etymology or meaning of the word "Obama" no consideration.